CITIZENS INSURANCE COMPANY v
PRO-SEAL SERVICE GROUP, INC

Docket No. 262759. Submitted October 18, 2005, at Detroit. Decided
November 1, 2005, at 9:10 a.m.

Citizens Insurance Company brought an action in the Oakland
Circuit Court against Pro-Seal Service Group, Inc.; and others,
seeking a declaratory judgment that Citizens, as Pro-Seal's gen-
eral commercial liability insurer, has no duty to defend or indem-
nify Pro-Seal in a trademark infringement action brought against
Pro-Seal by Flowserve Corporation and Flowserve Management
Company. Pro-Seal filed a counterclaim for a declaratory judgment
in its favor and reimbursement of costs incurred in the underlying
trademark infringement action. The court, Edward Sosnick, J.,
granted summary disposition for Citizens, ruling that, although
the Citizens policy included coverage for personal and advertising
injury, the policy excluded coverage for personal or advertising
injury caused by the insured with the knowledge that the act
would violate the rights of another and inflict personal or adver-
tising injury, and that the policy provided coverage for inadvertent
trade dress violations, but not for intentional trade dress viola-
tions as alleged in the trademark infringement action. Pro-Seal
appealed.

The Court of Appeals *held*:

1. Citizens has a duty to defend Pro-Seal in the underlying
action because the allegations in Flowserve's complaint arguably
constitute a "personal or advertising injury" as that term is
defined under the policy. An insurer has the duty to look behind
the third party's allegations to analyze whether coverage is
possible. The duty to defend extends to cases in which the
allegations in the complaint against the insured even arguably
come within the policy. The exclusionary clause for injury caused
by the insured with the knowledge that the act would violate the
rights of another does not preclude coverage because knowledge is
not an element of a trademark infringement.

2. The policy includes coverage for infringing another's trade
dress in an advertisement arising from the insured's business.
Arguably, Flowserve's explicit allegation of trademark infringe-

ment and counterfeiting serve as an allegation of a trade dress violation because there is no functional distinction between trademarks and trade dress and because the protection of each serves the statutory purpose of preventing deception and unfair competition.

3. Flowserve's allegations against Pro-Seal constitute a personal or advertising injury as defined by the policy. "Advertising" is defined in the policy as a notice that is broadcast or published to the public or specific market segments about products for the purpose of attracting customers. Flowserve sought an injunction against Pro-Seal to prohibit the use of Flowserve's trademark to market, advertise, or identify Pro-Seal products. Pro-Seal's alleged use of Flowserve's trademark in packaging and on products would constitute trade dress infringement in advertising.

4. Pro-Seal's alleged use of the Flowserve trademarks to identify Pro-Seal products and use of Flowserve's label on a shipping box containing a Pro-Seal product constitute conduct arising from Pro-Seal's business. The injunctive relief sought in the underlying action is also indicative of a causal connection between the alleged injury and Pro-Seal's alleged improper advertising activities.

5. The policy excludes insurance coverage for personal or advertising injury by the insured when the insured had knowledge that the act would violate the rights of another and would inflict personal or advertising injury. However, Pro-Seal's knowledge of any underlying trademark violation does not relieve Citizens of its duty to defend Pro-Seal because there is no knowledge or intent required in a trademark violation claim and Pro-Seal could have been liable to Flowserve even if Pro-Seal's infringement of Flowserve's trademark was inadvertent, negligent, or reckless. The policy exclusion does not apply to preclude coverage.

The order of summary disposition for Citizens is vacated and the case is remanded for entry of an order of summary disposition for Pro-Seal.

1. INSURANCE — POLICIES — DUTY TO DEFEND — THIRD-PARTY CLAIMS.

The determination whether an insurer has a duty to defend or indemnify an insured under an insurance policy necessitates determining whether coverage exists under the policy and, if coverage exists, if an exclusionary clause applies; the duty to defend depends on the allegations in the complaint filed by the third party against the insured; the insurance company must analyze whether coverage is possible or the claims are arguably within the policy coverage; doubt regarding coverage must be resolved in favor of the insured.

2. Insurance — Policies — Exclusionary Clauses.

> If an insurer intends to exclude coverage under certain circumstances, it should clearly state those circumstances in the exclusions section of the policy; exclusionary clauses are construed strictly in favor of the insured; coverage under a policy is lost if an exclusion in the policy applies to the claim; clear and specific exclusions must be effectuated because an insurer must not be held responsible for a loss it did not assume.

3. Insurance — General Commercial Liability — Trademark Infringement.

> An exclusion from coverage under a policy of general commercial liability insurance for personal and advertising injury caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict personal and advertising injury does not apply to preclude coverage for alleged trademark infringement by the insured in advertising inasmuch as such knowledge or intent is not required for a finding of trademark infringement.

*Plunkett & Cooney, P.C.* (by *James R. Lilly, Jeffrey C. Gerish,* and *David Dworetsky*), for Citizens Insurance Company.

*Pierce, Duke, Farrell & Tafelski, PLC* (by *Mark C. Pierce*), for Pro-Seal Service Group, Inc.

Before: Cooper, P.J., and Fort Hood and Borrello, JJ.

Per Curiam. In this action for declaratory relief, defendant Pro-Seal Service Group, Inc. (Pro-Seal), appeals as of right the trial court order granting plaintiff Citizens Insurance Company (Citizens) summary disposition. The trial court held that Citizens had no duty to defend or indemnify Pro-Seal in an underlying trademark infringement action filed by Flowserve Corporation and Flowserve Management Company (Flowserve) against Pro-Seal because the allegations in the underlying complaint fell within an exclusionary clause under

the commercial general liability insurance policy that Citizens issued to Pro-Seal. We vacate and remand.

## I. FACTS AND PROCEDURAL HISTORY

Pro-Seal is a Michigan corporation that is in the business of selling and repairing mechanical seals. Pro-Seal was insured under a commercial general liability policy and an umbrella policy, which were both issued by Citizens. Flowserve is a New York corporation[1] that manufactures, sells, and refurbishes mechanical seals and is a competitor of Pro-Seal in the sale of new seals and the repair of used seals. Flowserve sued Pro-Seal in federal court in Alaska, alleging that Pro-Seal had violated federal and state laws prohibiting trademark infringement, trademark counterfeiting, unfair competition, and trade-secret misappropriation. Flowserve sought recovery of damages from and injunctive relief against Pro-Seal. Pro-Seal notified Citizens about the Flowserve lawsuit and requested that Citizens defend it in the action, but Citizens refused to defend Pro-Seal, contending that the bulk of the allegations in Flowserve's complaint constituted trademark infringement claims that did not constitute an "advertising injury" as defined by the insurance policy. Regarding Flowserve's allegations of trade dress infringement, which Citizens conceded was "enumerated" in the commercial general liability policy, Citizens contended that there was no causal connection between the advertising and any alleged injuries and therefore concluded that it had no duty to defend Pro-Seal.

---

[1] Flowserve Corporation is a New York corporation and is the wholly owned subsidiary of Flowserve Management Company, which is a Delaware business trust. Flowserve Management Company owns the trademarks at issue in this case and has exclusively licensed them to Flowserve Corporation.

Citizens thereafter brought an action for declaratory judgment to determine whether it had a duty, under either the commercial general liability policy or the umbrella policy, to defend and indemnify Pro-Seal in the underlying Flowserve litigation. Pro-Seal counterclaimed for a declaratory judgment in its favor and reimbursement of costs incurred in the underlying action.

Pro-Seal moved for summary disposition under MCR 2.116(C)(8) and (10), and Citizens opposed the motion and filed a countermotion for summary disposition under MCR 2.116(I)(2). The trial court denied Pro-Seal's motion and granted Citizens' motion. The trial court observed that while the general commercial liability policy included coverage for "personal and advertising injury," the policy specifically excluded coverage for personal or advertising injury caused by the insured with the knowledge that the act would violate the rights of another and inflict personal or advertising injury. According to the trial court, the intent of the insurance policy was to cover inadvertent trade dress violations, but not intentional trade dress violations. The trial court ruled that the underlying action against Pro-Seal by Flowserve alleged intentional conduct on the part of Pro-Seal and that such intentional conduct did not fall within the scope of the limited coverage for advertising injury provided in the insurance policy. Therefore, the trial court granted Citizens' motion for summary disposition.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision granting or denying summary disposition in a declaratory judgment action. *Unisys Corp v Comm'r of Ins*, 236 Mich App 686, 689; 601 NW2d 155 (1999). The con-

struction and interpretation of the language in an insurance contract is also a question of law that this Court reviews de novo. *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 463; 663 NW2d 447 (2003); *Shefman v Auto-Owners Ins Co,* 262 Mich App 631, 636; 687 NW2d 300 (2004).

### III. ANALYSIS

#### A. SCOPE OF POLICY COVERAGE

The first issue on appeal is whether the trademark violation allegations in the underlying complaint filed by Flowserve against Pro-Seal constitute an "advertising injury" under the commercial general liability insurance policy that Citizens issued to Pro-Seal and therefore engender a duty for Citizens to defend Pro-Seal in the underlying action. In granting Citizens' motion for summary disposition, the trial court concluded that the policy exclusion for trademark violations made with "knowledge" precluded any duty to defend Pro-Seal without addressing the issue whether the allegations in the underlying complaint constituted an "advertising injury" under the policy. Appellate review is generally limited to issues decided by the trial court. *Candelaria v B C Gen Contractors, Inc,* 236 Mich App 67, 83; 600 NW2d 348 (1999). However, in this case, appellate review is appropriate because the interpretation and construction of an insurance contract is an issue of law, *Shefman, supra* at 636, and all the facts necessary for resolution of the issue have been presented. *Miller v Inglis,* 223 Mich App 159, 168; 567 NW2d 253 (1997). Furthermore, the proper analysis of whether an insurer has a duty to defend and indemnify an insured under an insurance policy first necessitates "a determination of whether coverage exists under the policy, and if coverage exists, then there must follow a

determination of whether the exclusionary clause applies." *Allstate Ins Co v Freeman*, 432 Mich 656, 661; 443 NW2d 734 (1989). Therefore, we will review this issue notwithstanding the trial court's failure to address the issue below.

An insurer's duty to defend is broader than its duty to indemnify. *Shefman, supra* at 637. To determine whether an insurer has a duty to defend its insured, a court must consider the language of the insurance policy and construe its terms to find the scope of the coverage of the policy. *Id.* "The duty of an insurance company to defend its insured is dependent upon the allegations in the complaint filed by a third party against the insured[.]" *Illinois Employers Ins of Wausau v Dragovich*, 139 Mich App 502, 506; 362 NW2d 767 (1984). However, the insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. *Radenbaugh v Farm Bureau Gen Ins Co of Michigan*, 240 Mich App 134, 137-138; 610 NW2d 272 (2000). The duty to defend extends to those cases where the allegations in the complaint filed against the insured even arguably come within the policy coverage. *Id.* at 137. Furthermore, if there is any doubt regarding whether a complaint alleges liability that is covered under the policy, the doubt must be resolved in the insured's favor. *Id.* at 138.

The commercial general liability policy at issue in this case provides for coverage for "personal and advertising injury." The definition of "personal and advertising injury" includes "[i]nfringing upon another's . . . trade dress . . . in your 'advertisement[.]' " The policy defines an "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

Two elements must be satisfied in order to find that Citizens had a duty to defend Pro-Seal. First, there must be an "advertising injury" as defined by the policy; and, second, there must be proof of a causal connection between the advertising injury and the advertising activities. *GAF Sales & Service, Inc v Hastings Mut Ins Co*, 224 Mich App 259, 262; 568 NW2d 165 (1997).[2]

We must first determine whether any allegations in Flowserve's complaint against Pro-Seal arguably constitute a "personal and advertising injury" as defined by the policy. Specifically, on the basis of the definition of "personal and advertising injury" articulated above, we must determine whether Flowserve's complaint alleges an infringement of Flowserve's trade dress in an advertisement. Flowserve's complaint against Pro-Seal specifically alleges "trademark infringement" and "trademark counterfeiting," among other allegations, but does not explicitly allege a "trade dress" infringement. However, the United States Supreme Court has recognized that there is no functional distinction between trademarks and trade dress. See *Two Pesos, Inc v Taco Cabana, Inc*, 505 US 763, 773-774; 112 S Ct 2753; 120 L Ed 2d 615 (1992). According to the Supreme Court, "the protection of trademarks and trade dress . . . serves the same statutory purpose of preventing deception and unfair competition." *Id.* at 773. Therefore, it is arguable

---

[2] In *GAF, supra* at 262, we stated that there were three requirements for an insurance policy to cover an advertising injury. In addition to the two elements articulated in this opinion, we held that there must also be a "course of advertising." *Id.* However, in *GAF*, the insurance policy stated that coverage applied to an "advertising injury" that was caused by an offense committed in the "course of advertising." *Id.* at 261. In contrast, in this case, the applicable provisions of the policy do not include "course of advertising" language. Therefore, we conclude that it is not necessary to find that there was a "course of advertising" for a finding of coverage in this case.

that Flowserve's explicit allegation of "trademark infringement" is sufficient to encompass a trade dress violation.

Even if the allegations of "trademark infringement" were not sufficient to encompass a trade dress violation, however, we conclude that Flowserve's complaint did allege a trade dress infringement even though the complaint failed to specifically characterize the violation as trade dress infringement. The trade dress of a product is essentially its total image and overall appearance. *Id.* at 764 n 1. The "trade dress" of a product is broad and " 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' " *Id.*, quoting *John H Harland Co v Clarke Checks, Inc,* 711 F2d 966, 980 (CA 11, 1983). Although Flowserve's complaint did not explicitly allege a "trade dress" violation, an insurer's duty to defend does not depend solely upon the terminology used in a plaintiff's pleadings. *Michigan Ed Employees Mut Ins Co v Karr,* 228 Mich App 111, 113; 576 NW2d 728 (1998). Rather, it is necessary to focus on the basis for the injury, and not on the nomenclature of the underlying claim, to determine whether coverage exists. *Id.* Among other allegations, Flowserve's complaint alleged that Pro-Seal manufactured and sold inferior imitations of Flowserve's trademarked seals, used Flowserve's trademarks to identify its own seals, counterfeited Flowserve's seal component products by representing them to be Flowserve's products, and sent a counterfeit seal to a customer in a crate marked with a Flowserve label. According to the complaint, Pro-Seal's conduct confused and misled customers into believing that Pro-Seal seals were Flowserve seals. The protection of trade dress is intended to " 'secure to the owner of the mark the goodwill of his business and to protect the ability of

consumers to distinguish among competing producers.' " *Two Pesos, Inc, supra* at 774, quoting *Park 'N Fly, Inc v Dollar Park & Fly, Inc,* 469 US 189, 198; 105 S Ct 658; 83 L Ed 2d 582 (1985). We believe that the concept of trade dress is expansive enough to include Flowserve's allegations because the bases for the allegations are deception and unfair competition. Therefore, examining the substance, as opposed to the mere form, of Flowserve's complaint, we conclude that Flowserve's complaint did allege infringement of Flowserve's trade dress, notwithstanding the complaint's failure to specifically characterize the violation as trade dress infringement.

Having concluded that Flowserve's underlying complaint did allege a violation of trade dress, we must next consider whether Pro-Seal's alleged trade dress violations occurred in an "advertisement." At the outset, we observe that the relief sought by Flowserve in its underlying complaint against Pro-Seal suggests that the alleged trade dress violations were committed during the course of advertising because Flowserve sought an injunction that would prevent Pro-Seal from using the Flowserve trademark "to market, advertise, or identify" Pro-Seal products. We further hold that the alleged trade dress violations occurred in an "advertisement" as that term is defined in the insurance policy. The commercial general liability policy broadly defines an "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." In *Poof Toy Products, Inc v United States Fidelity & Guaranty Co,* 891 F Supp 1228, 1235-1236 (ED Mich, 1995), the court stated:

> [A]llegations of trademark and trade dress infringement inherently involve advertising activity. In other words,

there can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress. [Citation omitted.]

Flowserve's complaint alleged that Pro-Seal used Flowserve's trademarks to identify its inferior Pro-Seal products and that Pro-Seal shipped its own seal in a box with a Flowserve label. In both cases, the alleged Pro-Seal conduct would have caused the customer confusion or deceived the customer regarding the origin or manufacturer of the goods. See *id.*[3] Therefore, the conduct constitutes advertisement. *Id.* Both using Flowserve's trademarks on Pro-Seal products and shipping a Pro-Seal seal in a box with a Flowserve label are acts constituting notice that is published to the specific market segment in which Pro-Seal and Flowserve compete about the seals for the purpose of attracting customers or supporters.

Finally, we must determine whether there was a causal connection between the advertisement and the injury. The language of the policy provides that the "insurance applies to 'personal and advertising injury' caused by an offense arising out of [Pro-Seal's] business." Pro-Seal's alleged use of the Flowserve trademarks to identify inferior Pro-Seal products and use of

---

[3] "Rival manufacturers may lawfully compete for the patronage of the public in the quality and price of their goods, in the beauty and tastefulness of their [e]nclosed packages, in the extent of their advertising, and in the employment of agents, but they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals." *Schwannecke v Genesee Coal & Ice Co*, 262 Mich 624, 627-628; 247 NW2d 761 (1933) (quotation marks deleted).

Flowserve's label to ship a box containing a Pro-Seal seal are conduct that arose out of Pro-Seal's business. In *GAF Sales & Service, Inc*, we concluded that there was no causal connection when the underlying complaint did not allege injury arising from the insured's advertising. *GAF, supra* at 264-265. In contrast, in this case, Flowserve, in its underlying complaint against Pro-Seal, did allege that Pro-Seal's unlawful use of certain Flowserve trademarks injured Flowserve by confusing and misleading customers, causing Flowserve to lose business and injuring Flowserve's business reputation. We conclude that the allegations in Flowserve's complaint established the requisite causal connection between Pro-Seal's advertising activities and the alleged injury. Furthermore, we observe that in its complaint, Flowserve sought to enjoin Pro-Seal from identifying Pro-Seal products with Flowserve's trademarks and also sought an order requiring Pro-Seal to surrender for destruction all products in Pro-Seal's possession bearing Flowserve's trademarks. The injunctive relief sought by Flowserve in the underlying action is also indicative of a causal connection between the alleged injury and Pro-Seal's alleged improper advertising activities.

### B. APPLICABLE POLICY EXCLUSION

The second issue in this case is whether the applicable policy exclusion precludes a finding that Citizens had a duty to defend Pro-Seal in the action brought by Flowserve. Although the comprehensive general liability policy generally provides coverage for "personal and advertising injury," the policy's "personal and advertising injury" coverage is subject to the following exclusion:

2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured *with the knowledge* that that act would violate the rights of another and would inflict "personal and advertising injury[.]" [Emphasis added.]

The trial court ruled that this exclusion relieved Citizens of any duty to defend Pro-Seal because the underlying action against Pro-Seal by Flowserve alleged intentional[4] conduct, and the policy, under the above quoted exclusion, specifically excluded coverage for intentional trade dress violations. Therefore, the trial court ruled that the allegations in the underlying lawsuit did not fall within the limited coverage for "personal and advertising injury" provided in the insurance policy.

If an insurer intends to exclude coverage under certain circumstances, it should clearly state those circumstances in the section of its policy entitled "exclusions." *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 472; 688 NW2d 523 (2004). An insurer is not required to defend claims specifically excluded from policy coverage. *American Bumper & Mfg Co v Nat'l Union Fire Ins Co*, 261 Mich App 367, 375; 683 NW2d 161 (2004). Generally, exclusionary clauses in insurance policies are construed strictly in favor of the insured. *English, supra* at 471-472. However, coverage under a policy is lost if an exclusion in the policy applies to the claim. *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 417; 537 NW2d 589 (1995). Clear and specific exclusions must be effectu-

---

[4] The trial court apparently concluded, without specifically addressing the issue, that the "with the knowledge" exclusion constituted an exclusion for "intentional" conduct. Our conclusion in this case does not require us to address the distinction, if such a distinction exists, between "knowledge" and intent.

ated; an insurer must not be held responsible for a loss it did not assume. *Id.*

Pro-Seal argues that the trial court erred in ruling that the exclusion for "personal and advertising injury" made with "knowledge" negated Citizens' duty to defend. According to Pro-Seal, the exclusion does not relieve Citizens of its duty to defend Pro-Seal because there is no knowledge or intent requirement in a trademark violation claim and Pro-Seal could have been liable to Flowserve even if its infringement of Flowserve's trademark was inadvertent, negligent, or reckless. We agree and are persuaded by the federal authority cited by Pro-Seal in support of its argument. In *Bay Electric Supply, Inc v The Travelers Lloyds Ins Co*, 61 F Supp 2d 611, 619 (SD Tex, 1999), the court held that a "knowledge of falsity" exclusion in the applicable insurance policy did not negate the insurer's duty to defend the insured in the underlying trademark violation against the insured because knowledge is not required for a finding of trademark infringement. See also *Union Ins Co v The Knife Co, Inc,* 897 F Supp 1213, 1217 (WD Ark, 1995) (intent is not a required element of trademark infringement and liability can be found even if the infringement was innocent and not willful). In ruling that the exclusion did not relieve the insurer of the duty to defend its insured, the court in *Bay Electric* reasoned that because liability for trademark infringement need not be based on intentional or willful conduct, the insured's conduct was actionable even if it was merely negligent or reckless. *Bay Electric, supra* at 619. Similarly, in this case, Pro-Seal's conduct was actionable even if it was innocent, negligent, or reckless. We therefore conclude, as did the court in *Bay Electric,* that the "with the knowledge" exclusion in the insurance policy in this case did not relieve Citizens of

the duty to defend Pro-Seal in the underlying trademark action against it.

We observe that willfulness is a factor that the courts must consider in awarding damages under the Lanham Act, 15 USC 1051 *et seq.*, and that some of Flowserve's allegations of intentional and willful conduct on the part of Pro-Seal were made in conjunction with a demand for enhanced damages and attorney fees. However, we believe that such allegations, which may have been designed merely to enhance damages, should not give rise to the "with the knowledge" exclusion when Pro-Seal could have been found liable for a trademark violation even if the infringement was not knowing. Therefore, there could be a finding of liability against Pro-Seal even if the infringement were negligent or reckless or even innocent. *Bay Electric, supra* at 619. Because knowledge or intent is not a required element or trademark infringement, the "with the knowledge" exclusion does not bar coverage.

### IV. CONCLUSION

In sum, we hold that Citizens had a duty to defend Pro-Seal in the underlying action brought by Flowserve because the allegations in Flowserve's complaint constitute a "personal or advertising injury" as that term is defined under the commercial general liability policy. Because the allegations in the complaint arguably came within the policy coverage, the duty to defend arose. Furthermore, because knowledge is not an element of a trademark infringement, Pro-Seal could have been liable to Flowserve even if Pro-Seal's conduct were innocent, negligent, or reckless. Therefore, the "with the knowledge" exclusion does not apply to preclude coverage. Because we hold that Citizens had a duty to

defend Pro-Seal under the applicable commercial general liability policy, we need not address Pro-Seal's contention that Citizens had a duty to defend under the umbrella policy.

The order granting summary disposition in favor of Citizens is vacated, and the case is remanded for entry of an order granting summary disposition in favor of Pro-Seal. We do not retain jurisdiction.